B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|

| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
|---|---|

| **PARTY** (Check One Box Only)<br>□ Debtor          □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor        □ Other<br>□ Trustee | **PARTY** (Check One Box Only)<br>□ Debtor          □ U.S. Trustee/Bankruptcy Admin<br>□ Creditor        □ Other<br>□ Trustee |
|---|---|

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
□ 11-Recovery of money/property - §542 turnover of property
□ 12-Recovery of money/property - §547 preference
□ 13-Recovery of money/property - §548 fraudulent transfer
□ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
□ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
□ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
□ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
□ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
□ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
□ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
□ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
□ 61-Dischargeability - §523(a)(5), domestic support
□ 68-Dischargeability - §523(a)(6), willful and malicious injury
□ 63-Dischargeability - §523(a)(8), student loan
□ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
□ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
□ 71-Injunctive relief – imposition of stay
□ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
□ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
□ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
□ 01-Determination of removed claim or cause

**Other**
□ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
□ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| □ Check if this case involves a substantive issue of state law | □ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| □ Check if a jury trial is demanded in complaint | Demand  $ |

Other Relief Sought

**B1040 (FORM 1040) (12/15)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR | BANKRUPTCY CASE NO. | |
| DISTRICT IN WHICH CASE IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

### INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

In re:   David W. Edwards,                                  ) Case No.: 18-32068-KRH
                                                            )
                         Debtor.                            ) Chapter 7
                                                            )
                                                            ) AP No.:  _____
_____                  )

Mary Crossland,

                         *Plaintiff*

v.

David W. Edwards.

                         *Defendant*.

## **COMPLAINT**

COMES NOW the Plaintiff, Mary Crossland (hereinafter "Crossland"), by counsel, and for her complaint objecting to the dischargeability of her claim against David W. Edwards (hereinafter "Edwards" respectfully represents as follows:

1. Jurisdiction of this Court over the instant adversary proceeding is based upon 28 U.S.C. §§ 1334 and 157 because this action arises in and relates to the bankruptcy case of the Debtor, a chapter 7 case, converted from a Chapter 13 in this Court on May 2, 2018.

2. This proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

3. That the Debtor, DAVID EDWARDS, (hereinafter "Edwards"), owned and operated Estates by David, LLC (hereinafter "Estates by David"), a limited liability company licensed to do business in the Commonwealth of Virginia though the State Corporation Commission.  See exhibit A attached hereto, and incorporated herein by reference.

Counsel for the Plaintiff
Brett Alexander Zwerdling, VBN 39569
Charles E. Adams, VBN 37181
Zwerdling, Oppleman & Adams
5020 Monument Avenue
Richmond, VA  23230
Phone 804-355-5719 Fax 804-355-1597
bzwerdling@zandolaw.com

4.     That Edwards operated Estates by David from its primary business location at 7355 Penrith Drive, Mechanicsville, Virginia 23116, in the County of Hanover, Commonwealth of Virginia.

5.     That Edwards executed a contract on behalf of Estates by David on the 12th day of May 2015 with the Petitioner, MARY CROSSLAND (hereinafter "Crossland") for the estate sale service to include the following:  A.  Organizing items to be sold in the house, garage, sheds and yard.  B.  Appraising and pricing items to be sold.  C. Conducting a tag sale onsite. D. Providing a sales summary with settlement three weeks after the sale, but sales are not itemized. See exhibit B attached hereto, and incorporated herein by reference.

6.     That Edwards agreed upon behalf of Estates by David to provide these estate sale service to Crossland to sell thousands of pieces of jewelry previously owned by her deceased mother.  See exhibits B and C attached hereto, and incorporated herein by reference.

7.     That on or about the 27th day of May 2015, Edwards advertised on his page at facebook.com that: "Estates by David LLC will be conducting a Estate Jewelry Sale on Friday, June 5.  All of this Jewelry belonged to a Doctors Wife who could not resist buying a nice piece of Jewelry!  There are Thousands of Pieces to choose from! Fine Pieces !! Necklaces, bracelets, pins, pendants, rings, and other pieces!  This sale will be by appointment only starting at 10am and last appointment at 4pm.  Since the sale is being held in our Home, we have narrowed the number of people per appointment to 8 people every 30 minutes.  The 10 and 10:30 slots are closed.  But other times are available.  This Jewelry will be priced to be offered for Sale!  Go to Estatesales.net to view many pieces that will be offered for sale!  Email or Facebook us with your appointment time or call (804) 723-4121!  So much to see, and lots to purchase!!"  See exhibit C.

2

8.    That Edward's page on Facebook.com also displayed at least approximately twenty-eight (28) separate digital images of numerous pieces of the aforementioned jewelry.  See exhibit C.

9.    That Crossland had provided to Edwards and Estates by David all the thousands of pieces of jewelry described by Edward's Facebook.com advertisement and shown in the digital images pursuant to the May 12, 2015 contract between the parties.  See exhibits B and C.

10.    That, upon information and belief, Edwards and Estates by David conducted the estate jewelry sale on the 5th day of June 2015, as provided in the May 12, 2015 contract between the parties, and as advertised on Edwards page on facebook.com.  See exhibits B and C.

11.    That, on the 7th day of June, 2015, Edwards sent an email from estatesbydavid@comcast.net to Crossland at mcc214@verizon.net informing her, *inter alia,* "We had your Jewelry Sale on Friday by appointment and I think it was a great success!  It was fun and people really love going thru all the pieces and purchased also.  Don't have actual amount we took in but will have it in the next few days."  See exhibit D attached hereto, and incorporated herein by reference.

12.    That the pieces of jewelry provided by Crossland to Edwards and Estates by David pursuant to the May 12, 2015, contract included at least the following.  See exhibit C.

13.    That, as of the date of this filing of this Complaint, Crossland has received neither any monies in settlement of the estate jewelry sale nor a return of any of the aforementioned pieces of jewelry form Edwards and/or Estates by David.

**COUNT I:  BREACH OF CONTRACT**

14.    That Crossland hereby incorporates and re-alleges paragraphs one (1) through eleven (11) *supra.*

15.   That the May 12, 2015, Contract between the parties requires that Estates by David would provide Crossland a Sale Summary with settlement within three weeks after the jewelry estate sale.  See exhibit B.

16.  That the May 12, 2015, contract between the parties further provides that Estates by David would receive a fee of thirty-five percent (35%) of the fair market value of the pieces of jewelry sold at the jewelry estate sale with Crossland receiving a settlement of the remaining sixty-five percent (65%) of the sale.  See exhibit B.

17.  That neither Edwards nor any other employee and/or agent of Estates by David ever informed Crossland that any of the pieces of jewelry described *supra* and provided for the estate jewelry sale remained unsold after the 5th day of June 2015.

18.  That Estates by David has materially breached the May 12, 2015, Contract between the parties by failing to provide Crossland with a Sale Summary with Settlement within three (3) weeks after the sale on the 5th day of June 2015, or up to the date of the filing of this cause of action.  See exhibit B.

19.  That, as of the date of the filing of this Complaint, neither Edwards nor any other employee and/or agent of Estates by David has either paid Crossland any monies owed to her under the May 12, 2015, Contract between the parties, or returned a single piece of the jewelry described *supra*.  See exhibits B, C and D.

20.   That, upon information and belief, the monies due to Crossland from Estates by David pursuant to the May 12, 2015, Contract is approximately $ 3,916.90 based on sixty-five percent (65%) share of the estate jewelry sale conducted by Estates by David on or about the 5th day of June 2015.  See exhibit B.

21.  That the State Corporation Commission of the Commonwealth of Virginia cancelled

the status of Estates by David on the 31st day of July 2016; and, upon information and belief,

Edwards was the last owner of any interest in that limited liability company, and the last holder

of the company's assets.

## COUNT II:  FRAUD

22.   That Crossland hereby incorporates and re-alleges paragraphs one (1) through

nineteen (19) *supra.*

23.   That as set forth *supra* in paragraph nine (9), Edwards sent Crossland an email

informing her of the "…great success" of the estate jewelry sale of the pieces of jewelry pursuant

to the May 12, 2015, Contract between the parties.  See exhibit B and D.

24.  That Edwards at estatesbydavid@comcast.net wrote an

email to Crossland at mcc214@verizon.net on the 25th day of June 2015, claiming: "///just

wanted to give you the totals of your two sales we conducted for you.  The first sale in your

home was $1925, and the jewelry sale was $4101.  I thing they were both great sales.  We will be

working on these to put together a sales summary for each and checks.  We will try and get this

done ASAP.  We have been very busy and thankful for how busy we are!!..."  See exhibit E

attached hereto, and incorporated herein by reference.

25.  That Edwards also solicited Crossland's cooperation in have Sharon consider a

jewelry sale similar to that done on behalf of Crossland and, furthermore, promised to "…touch

base with you this week…" about her proceeds from the estate jewelry sale.  See exhibit  D.

26.  That Edwards at estatesbydavid@comcast.net sent an email

to Crossland at mcc214@verizon.net on the 10th day of August 2015 informing her "working on

your records presumable the Sales Summary with Settlement but slower these days !!  Haven't

forgotten you!"  See exhibit F attached hereto and incorporated herein by reference.

27.   That Edwards at estatesbydavid@comcast.net then sent an

email to Crossland at mcc214@verizon.net on the 20th day of September 2015, further informing

her: "I just want you to know that we are working on your two sales and will hopefully get them

together for you within the next few weeks."  See exhibit G attached hereto, and incorporated

herein by reference.

28.   That, after several months with no communication from either Edwards or anyone

from Estates by David, Crossland at mcc214@verizon.net inquired by email to Edwards at

estatesbydavid@comcast.net with the query:  "I really hate to bother you but do you have the

checks ready?" and Edwards replied by email the same day:  "Sorry for the long delay:…But I

am trying to get caught up in the next few weeks.  Thank you for being so patient with me."  See

exhibit H attached hereto, and incorporated herein by reference.

29.   That, after more than another quarter ¼ of a year had passed without any

communication form either Edwards, and/or Estates by David, Crossland at

mcc214@verizon.net inquired by email to Edwards at estatesbydavid@comcast.net on the 2nd

day of April 2016:  "I am checking in to see where you are with the payment for the two estate

sales.  I would appreciate knowing when to expect payment."  Edwards responded by email that

same date:  "Hey Mary! Just retiring from from by business since my health problems still

continuing but improving!  Retiring now will allow me to strengthen our my clients accounts!

Thanks for being so patient!  I will be spending time on your account!"  See exhibit I attached

hereto, and incorporated herein by reference.

30.   That many more months passes without either payment or communication from

Edwards and/or Estates by David in this regard, and Crossland at mcc214@verizon.net sent a

firm demand on the 3rd day of August 2016, by email to Edwards at estatesbydavid@comcast.net

as follows: "As you are aware I have not received payment from the Estate Sales that you conducted on my personal property in 2015. It is over a year now and I cannot wait any longer for this payment. This is my last attempt to personally ask for the money from the two sales. The total amount is $6026. Please send a check to me by Friday, August 12, 2016." See exhibit J attached hereto, and incorporated herein by reference.

31.  That Edwards at estatesbydavid@comcast.net responded the next day to Crossland's email form the 3rd day of August 2016, from mcc214@verizon.net with more excuses: "Hey Mary. I am sorry for the long delay in getting you paid. The company was closed due to financial problem that have been on going for the past two years due to my illness. The shop closed a year ago in March, and the Estate Sale Business closed this this past March. I am working with my Lawyer to try and work out payment to you! This has been a very hard two years fro me, and my illness created hardship on me personally and for the business. I am trying hard to bring right to this situation. You have been create client and friend to work with, and I am so embarrassed about this situation. Working 35 years in this business has been great, but having not been up to the task in the past two years has has created this hardship! I am working in this problem and try to resolve it soon." See exhibit J.

32.  That Crossland at mcc214@verizon.net made a final email demand to Edwards at estatesbydavid@comcast.net on the 4th day of August 2016: "David, Please let you attorney know that I will need the check by Friday August 12th." Edwards refused to comply with the following email responses on the same day: "I will not have the funds by Friday August 12. There is no money in the closed business. I am working to arrange a way to pay my debts outstanding. I am not sure when the funds will available. But trying to get this situation. See exhibit K attached hereto, and incorporated herein by reference.

7

33.   That Edwards' emails to Crossland were intended to foster in Crossland false impression that Edwards and/or Estates by David intended to honor the contractual obligations contained in the May 12, 2015, Contract between the parties.

34.   That Edwards' emails repeatedly falsely promised Crossland that she would receive payment on the May 12, 2015, contract between the parties in the near future following the date of the communication; but Crossland has received nothing whatsoever from either Edwards and/or Estates by David more than one and on-half (1 ½) years since the jewelry estate sale, and long past the three (3) weeks required by the aforesaid contact.  See exhibits  D,E,F,G,H,I,J, and K.

35.   That Edwards' email of the 25th day of June 2015 to Crossland falsely describes a total receipt of Six Thousand Twenty-Six Dollars and No Cents ($6,026.00) for the sale of "…Thousands of Pieces …" of jewelry, but the sale of that many pieces of jewelry as described *supra* must result in receipts of a much greater magnitude.  See exhibit E.

36.   That nevertheless Edwards nor any agent and/or employee of Estates by David ever informed Crossland that any pieces of jewelry provided for sale pursuant to the May 12, 2015, contract between the parties remained unsold after the jewelry estate sale on the 5th day of June 2015, but the total receipt of Four Thousand One Hundred One Dollars and No Cents ($4,101.00) communicated by Edwards to Crossland could not account for the sale of all those thousands of pieces of jewelry.

37.   That Crossland's share of the sale of the "…Thousands of Pieces…" of jewelry, or their return unsold, was a material term to the May 12, 2015, contract between the parties.

38.   That Edwards' email to Crossland after the jewelry estate sale on the 5th day of June

2015 were knowingly and intentionally made to Crossland to falsely convince her that she would receive her share of the sale pursuant to the May 12, 2015, contract between the parties within the near future; that she would only receive a portion of the actual proceeds from the sale that all pieces of jewelry provided to Edwards and/or Estates by Dave by Crossland were actually sold; and, that, consequently, Crossland needed to take no steps to protect her interests in this regard.

39.  That Edwards intended to mislead Crossland to prevent her from taking any immediate steps to protect her interests in this regard until he could shut down Estates by David, and then claim the limited liability company had not assets or money.

40.  That Edwards informed Crossland by email that Estates by David on the 4th day of August 2016:  "There is no money in the closed business."  See exhibit J.

41.  That Crossland reasonable relied on Edwards false representation due to Estates by David extensive and effective advertisement of the jewelry estate sale on facebook.com; his claims of "great success" from the sale of the pieces of jewelry; the extremely busy nature of Estates by David because of all the sales; and the three decades and more longevity of Estates by David.

42.  That Edwards false representations caused Crossland to take no action to protect her interests until more than one and one-half (1 ½) hears had passed from the jewelry estate sale without payment and/or return of the unsold pieces of jewelry, and until after Estates by David has ceased doing business.

43.  That Edwards intentional and knowing false representations are demonstrated by his repeated emails communications to Crossland promising payment of her share of the sales in the near future, and commenting on the many sales conducted by Estates by David; but he later acknowledge to Crossland in an email on the 4th day of August 2016 that "…(t)he company was

9